UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

BRANDON DILLER, individually and as
the representative of a class of similarly-
situated persons,

        Plaintiff,

v.

DONALD J. TRUMP FOR PRESIDENT,
INC., and the REPUBLICAN
NATIONAL COMMITTEE,

        Defendants.

Case No. 20-1079

JURY TRIAL DEMANDED

## CLASS ACTION COMPLAINT

Plaintiff, Brandon Diller ("Plaintiff"), individually and on behalf of all others similarly situated, brings this class action complaint against defendant, Donald J. Trump For President, Inc., a principal campaign committee for Donald J. Trump, and the Republican National Committee, a U. S. political committee (collectively "Defendants"), to stop their practice of sending unsolicited text messages in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), and to recover statutory damages and other relief for all those who received such text messages. Plaintiff's allegations are based on information and belief and the investigation of his counsel, except those pertaining to his own actions, which are based on personal knowledge.

## INTRODUCTION

1. Donald J. Trump ("Trump") is a Presidential Candidate who began running for election in 2015. Donald J. Trump For President, Inc. (the "Trump

1

Committee") is the principal campaign committee for Trump's presidential and reelection campaign, and registered as such with the Federal Elections Commission on June 29, 2015.[1]

2. The Republican National Committee ("RNC") is a U.S. political committee.

3. Defendants sent (or directed or caused to be sent on its behalf) text messages to the wireless telephones of Plaintiff and other similarly-situated persons without their prior express consent and without providing the proper disclosures in violation of federal law.

4. According to a 2012 study by the Pew Research Center, 69% of cellular users who use text messaging receive unwanted text message spam, and "[o]f those texters, 25% face problems with spam/unwanted texts at least weekly." (Source: http://www.pewinternet.org/2012/08/02/mobile-phone-problems (last visited: November 20, 2015.)) Plaintiff is such a person who receives unwanted text messages.

5. Defendants' text messages caused Plaintiff and other consumers actual harm, not only because the consumers were subjected to the aggravation that necessarily accompanies mobile spam, but also because many consumers pay their cell phone service providers to receive text messages. Moreover, the messages diminish battery life, waste data storage capacity, and are an intrusion upon privacy and seclusion.

---

[1] http://docquery.fec.gov/pdf/501/201506299000000501/201506299000000501.pdf

2

6. In order to redress these injuries, Plaintiff brings this class action lawsuit under the TCPA, which specifically prohibits unsolicited calls to cell phones, and Plaintiff does so individually and on behalf of the class of similarly-situated persons described below, seeking: (1) an award of statutory damages for each violation of the TCPA; (2) an injunction mandating that Defendants cease and desist sending text messages, using an automatic dialing system, without prior express consent; and (3) all other appropriate relief under the circumstances.

7. As will be discussed, Defendants have sent text messages to consumers without their prior express consent to receive such text messages, without providing the disclosures required by the TCPA, and in a manner that violates the privacy rights of Plaintiff and the other class members. Defendants continue to send the messages even after consumers have requested them to stop sending the messages. The TCPA is intended to prevent calls and messages like the ones described within this Complaint.

## JURISDICTION AND VENUE

8. Subject matter jurisdiction exists pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the TCPA, a federal statute.

9. Personal jurisdiction exists here because a substantial portion of the wrongdoing alleged in this complaint took place in or was directed toward the State of Illinois, and Defendant has transacted business and made or performed contracts substantially connected with the State.

10. Venue is proper in this District, pursuant to 28 U.S.C. § 1391(b)(2), because a significant and substantial portion of the events at issue took place here.

## PARTIES

11. Plaintiff is an individual who resides in Plainfield, Illinois.

12. The Trump Committee, is the "principal campaign committee" for the Trump presidential and reelection campaigns, was registered with the Federal Elections Commission on June 29, 2015, and its principal location is at 725 Fifth Avenue, New York City, NY 10022.

13. The RNC is a U.S. political committee and has its principal place of business at 310 First Street SE, Washington DC 20003.

## FACTS

14. Short Message Service ("SMS"), more commonly known as "text messaging," is a popular means for communicating among cellular/wireless subscribers ("cellular" or "wireless" phones). SMS messages are directed to a wireless device using the telephone number assigned to the device. When an SMS message is successfully made, the recipient's wireless phone rings, alerting him or her that a message is being received. As wireless telephones are inherently mobile and are frequently carried on their owner's person, the called party may receive SMS messages virtually anywhere in the world.

15. The most common form of texting is person-to-person messaging, but text messages may also be used by automated systems to facilitate the ordering of

products and services from cellular phones or for participating in contests or other marketing programs.

16. Political campaigns continually seek cost-effective ways to mass market their candidates to build support, solicit donations, and disseminate their political agendas.

17. Text messages use the technology (cellular phones) owned and paid for by the recipients, who often incur a charge for each incoming text message regardless of whether the message was authorized.

18. At issue here, Defendants sent (or caused to be sent) text messages to cellular phone users—including Plaintiff and the other members of the putative class—to promote Trump's presidential and reelection campaigns.

19. Under the TCPA, it is unlawful to send SMS or "text" messages using an automatic telephone dialing system, as defined by the TCPA, to wireless telephones without the recipient's prior express consent.

20. Under the TCPA, the Federal Communications Commission ("FCC") has the authority to issue rules and regulations for the implementation of the TCPA.

21. The FCC issued a Declaratory Ruling that acknowledged the "costly" and "particularly intrusive" nature of unwanted text messages, stating, "Month

after month, unwanted robocalls and texts, both telemarketing and informational, top the list of consumer complaints received by the Commission."[2]

22. On October 21, 2014, the FCC issued Enforcement Advisory No. 2014-04, specifically "Warning Political Campaigns and Promoters Against Robocall Abuse," including text messaging improprieties.[3]

23. The FCC's Enforcement Bureau reminded political campaigns and calling services about the "clear limits" on the use of autodialed text messages. *Id.* Autodialed calls including text messages "to cell phones" … "are prohibited, subject only to two exceptions: 1) calls made for emergency purposes, and 2) calls made with the prior express consent of the called party." *Id.*[4]

### Defendants' Unlawful Text Messages to Plaintiff and the other Class Members

24. Plaintiff is, and at all times mentioned herein was, the subscriber of his cellular telephone number ending in 8062 (the "8062 Number").

---

[2] *See* In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Declaratory Ruling and Order, CG Docket No. 02-278, ¶1 (FCC July 10, 2015).

[3] https://apps.fcc.gov/edocs_public/attachmatch/DA-14-1505A1.pdf

[4] *Id.* (citing *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Declaratory Ruling, 23 FCC Rcd 559, 565, para. 10 (2008) (concluding that creditors and debt collectors claiming prior express consent to deliver prerecorded voice or autodialed calls to cell phones are responsible for demonstrating such consent was granted); *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order and Third Order on Reconsideration, 21 FCC Rcd 3787, 3812, para. 46 (2006) (with respect to junk faxes, concluding that "[i]n the event a complaint is filed, the burden of proof rests on the sender to demonstrate that permission was given").

25. The 8062 Number is, and at all times mentioned herein was, assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

26. Defendants devised and implemented a campaign marketing strategy that includes the transmission of text messages through the use of an automatic telephone dialing system.

27. On about March 25, 2019, and continuing through at least October 2019, Defendants transmitted or caused to be transmitted several text messages to the 8062 Number.

28. For example, on about September 25, 2019, Defendants transmitted or caused to be transmitted the following text message to the 8062 Number:

> Reply Y to submit your response & receive recurring SMS/MMS msgs about President Trump & Republicans. Msg&data rates may apply. Terms apply 80810-info.com

29. The source of the above SMS message was identified as "80810".

30. On about September 25, 2019, Defendants also transmitted or caused to be transmitted the following text message to the 8062 Number:

> Reply YES to join Trump and receive important messages. No purchase rqd. Msg&data rates may apply. Terms apply 80802-info.com
> # joined on donaldjtrump.com

31. The source of the above SMS message was identified as "80822".

32. The sources of the above message, "80810" and "80822" are SMS short code leased by the Defendants or the Defendants' agent(s) or affiliate(s), and are used for operating the Defendants' text message marketing program.

33. Plaintiff and the Class members did not give prior express consent for Defendants to send text messages to their wireless phones.

34. Plaintiff did not provide the 8062 Number to Defendants.

35. Plaintiff never requested the Defendants to send him text messages to the 8062 Number.

36. On the contrary, Plaintiff repeatedly attempted to unsubscribe from Defendants' text messages and received confirmations that he had unsubscribed.

37. However, Defendants nonetheless continued to send the text messages even though Plaintiff had never subscribed and had requested to have the messages stop.

38. For example, on about September 27, 2019, Plaintiff received the following unsubscribe confirmation text message sourced from "80822" to the 8062 number:

> President Trump: You have been unsubscribed and will not receive any more messages.
>
> Reply TRUMP to re-subscribe.

However, on October 13, 2019, Plaintiff received a new unsolicited text message from Defendants at "80822" to the 8062 number:

> Reply YES to join  Trump and receive important messages. No purchase rqd. Msg&data rates may apply 88022-info.com # joined on donaldjtrump.com

39. On about September 27, 2019, Plaintiff received the following unsubscribe confirmation text message sourced from "80810" to the 8062 number:

> Republican National Committee: You have been unsubscribed and will not receive any more messages. Reply RNC to re-subscribe.

However, on October 13, 2019, Plaintiff received a new unsolicited text message from Defendants sourced from "80810" to the 8062 number:

Reply Y to submit your response & receive recurring SMS/MMS msgs about President Trump & Republicans. Msg&data rates may apply 88022-info.com # joined on donaldjtrump.com

40. Defendants sent, or had sent on their behalf, the same or substantially the same text messages *en masse* to thousands of wireless telephone numbers or randomly generated phone numbers.

41. Defendants sent these text messages to Plaintiff and the Class members using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers.

## CLASS ACTION ALLEGATIONS

42. Plaintiff brings this lawsuit as a class action on behalf of himself and all other similarly-situated persons (the "Class"), pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure.

43. The Class is initially defined as follows:

"Every person: (1) to whom, from December 2015 to the filing of this action, defendant Donald J. Trump For President, Inc. (the "Trump Committee") or the Republican National Committee sent a non-emergency telephone SMS message to the person's cellular telephone through the use of an automatic dialing system; (2) and did not provide express consent to the Trump Committee or the RNC to send an SMS message regarding Donald J. Trump."

(Plaintiff reserves the right to change the proposed class definition during this litigation.) Specifically excluded from the Class are the following persons: (a) Defendant and its respective affiliates, employees, officers, directors, agents, and representatives and their immediate family members; (b) Class Counsel, including all of their employees; (c) the judges who preside over this litigation, including the

members of their immediate families; and (d) all persons who make a timely election to be excluded from the Class.

44. This action is brought and may properly be maintained as a class action pursuant to Fed. R. Civ. P. 23. This action satisfies the numerosity, commonality, typicality, and adequacy requirements under Rule 23 (a). Additionally, prosecution of Plaintiff's claims separately from the Class's claims would create a risk of inconsistent or varying adjudications under Rule 23 (b) (1) (A). Furthermore, the questions of law or fact that are common in this action predominate over any individual questions of law or fact making class representation the superior method to adjudicate this controversy under Rule 23 (b) (3).

45. **Numerosity/Impracticality of Joinder**: On information and belief, the Class is so numerous that joinder of all Class members is impracticable. The precise number of Class members and their addresses are unknown to Plaintiff, but can be obtained from Defendant's records or the records of third parties. On information and belief, the Class includes thousands of persons nationwide.

46. **Ascertainability:** The Class is clearly defined based on objective criteria, permitting Class members to be identified. On information and belief, the members of the Class may be identified from Defendant's records or the records of third parties.

47. **Commonality and Predominance**: There is a well-defined community of interest among the Class members and common questions of law and fact

predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary from one Class member to another and may be determined without reference to the individual circumstances of any Class member, include, but are not limited to the following:

    a.    Whether Defendants (or others on their behalf) violated the TCPA by sending unauthorized text messages to Plaintiff and the other members of the Class;

    b.    Whether the equipment Defendants (or others on their behalf) used to send the text messages in question was an automatic telephone dialing system as defined by the TCPA;

    c.    Whether Defendants' conduct (or others on their behalf) constitutes a violation of the TCPA;

    d.    Whether Plaintiff and the other members of the Class are entitled to statutory damages under the TCPA;

    e.    Whether Defendants' actions were knowing or willful and, if it determines they were, whether the Court should treble the statutory damages awarded to Plaintiff and the other members of the Class; and

    f.    Whether Plaintiff and members of the Class are entitled to equitable relief, including but not limited to injunctive relief.

48.    **Typicality**: Plaintiff's claims are typical of the claims of the Class because Plaintiff and all Class members were injured by the same wrongful practices. Plaintiff and the other Class members received text messages from

11

Defendants without their express written consent and without the proper disclosures required by the TCPA. Under the facts of this case, because the focus is on Defendants' conduct, if Plaintiff prevails on his claims, then the other Class members must necessarily prevail as well.

49. **Adequacy of Representation**: Plaintiff is an adequate representative of the Class because his interests do not conflict with those of the Class members he seeks to represent. Plaintiff has retained financially-able attorneys who are competent and experienced in complex class action litigation and Plaintiff intends to vigorously prosecute this action. Plaintiff and his counsel will fairly and adequately protect the interests of the Class.

50. **Superiority**: A class action is the superior method for the fair and efficient adjudication of this lawsuit because individual litigation of each Class members' claims would be economically infeasible and procedurally impracticable. The individual damages incurred by each Class member as a result of Defendants' wrongful conduct are too small to warrant the expenses of individual suits. The likelihood of individual Class members prosecuting separate claims is remote, and even if every Class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases. Individual Class members do not have a significant interest in controlling the prosecution of separate actions. Furthermore, individualized litigation would create the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the

same factual issues. Plaintiff foresees no difficulty in the management of this action as a class action. The Class members and their statutory damages may be determined based upon information maintained by or available to Defendant.

## COUNT I - VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227, *ET SEQ.*

51. Plaintiff incorporates the preceding paragraphs as though fully alleged herein.

52. Defendants or others on their behalf sent text messages to the wireless telephone numbers of Plaintiff and the other Class members *en masse* without their prior express consent.

53. Defendants sent these text messages, or had them sent on its behalf, using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers.

54. Defendants utilized equipment that sent the text messages to Plaintiff and other Class members simultaneously and without human intervention.

55. By sending the text messages to Plaintiff and the Class, the Trump Committee has violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendants' unlawful conduct, the Class members, under section 227(b)(3)(B), are each entitled to, *inter alia*, a minimum of $500.00 in damages for each such violation of the TCPA.

56. Should the Court determine that Defendants' conduct was willful or knowing, the Court may, pursuant to section 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other Class members.

## JURY DEMAND

57. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all claims in this Complaint so triable.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, requests that the Court enter an Order:

A. Certifying the Class as defined above, appointing Plaintiff as the representative of the Class, and appointing his counsel as Class Counsel;

B. Finding that Defendants violated the TCPA;

C. Awarding $500 statutory damages to all of the Class members;

D. Awarding treble damages if the Court concludes that Defendant's violations were willful or knowing;

E. Requiring Defendants to cease sending text messages to wireless phones through the use of an automatic telephone dialing system without prior express consent, and otherwise protecting the interests of the Class;

F. Awarding attorneys' fees and costs as appropriate; and

G. Awarding such other and further relief that the Court deems reasonable and just under the circumstances allowed by law or equity.

Respectfully submitted,

BRANDON DILLER, individually and as the representative of a class of similarly-situated persons,

By: /s/ Phillip A. Bock
Phillip A. Bock
Tod A. Lewis
David M. Oppenheim
Jonathan B. Piper
BOCK, HATCH, LEWIS & OPPENHEIM, LLC
134 N. La Salle St., Ste. 1000
Chicago, IL 60602
Tel: (312) 658-5500
Fax: (312) 658-5555

15